UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEWEL E. BROWN, | : | CASE NO. 3:02CV1516(CFD) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| CENTRAL CONNECTICUT STATE | : | |
| UNIVERSITY, DR. RICHARD JUDD, | : | |
| RICHARD BACHOO and | : | |
| CAROLYN MAGNAN | : | |
| *Defendants* | : | November 15, 2007 |

## DEFENDANTS' RULE 56a(1) STATEMENT OF FACTS

1. The plaintiff, Jewel E. Brown, is a resident of the state of Connecticut. (Ex. 1, Amended and Substituted Complaint, ¶ 1)

2. Prior to 1999, Brown served as one of two Deputy Directors of the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Brown and the other Deputy Director were both dismissed from their positions in September 1999. (Ex. 2, Excepts from Deposition of Jewel Brown in <u>Brown v. CHRO</u>, dated December 5, 2002 pp. 10:15-11:10; 14:21-15:10 [hereinafter "Brown v. CHRO Depo").

3. Defendant Carol Magnan, serves as the Counsel to the President for Central Connecticut State University (hereinafter "CCSU"). In June of 2002 she held her current position and was also acting as the Interim Director of Affirmative Action. Richard Judd was the President of CCSU in 2002. (Exhibits 3 and 4, Affidavits of

1

Carolyn Magnan,, dated 9/13/02, ¶'s 3-4 and Affidavit of Carolyn Magnan, dated October 22, 2007, ¶ 2 [hereinafter "Second Magnan Affidavit"]).

4. Defendant Richard Bachoo, a black male, is the current Chief Administrative Officer for CCSU and held that same position in June 2002. (Exhibit 5, Excerpts from deposition of Richard Bachoo, dated December 19, 2002, p. 4:7-14, [hereinafter "Bachoo Depo."]; Exhibit 10, AAP Form 2).

5. In June 2002, Central Connecticut State University sought to fill the position of Coordinator of Multicultural Affairs and Director of Affirmative Action (hereinafter "CMA Position"). (Ex. 4, Second Magnan Affidavit, ¶ 6; Exhibit 6, Job Announcement A-434).

6. The CMA position is not within the classified state civil service, but is subject to the CSU Personnel Policies for Management and Confidential Professional Personnel. (Ex. 3, Affidavit of Carolyn Magnan,, dated 9/13/02, ¶¶ 5-6).

7. The CMA is responsible for all aspects of Affirmative Action, including the drafting and filing of the University's Affirmative Action Plan with the Connecticut Commission on Human Rights and Opportunity by June 30 of each year. Further, the position is also responsible for monitoring the majority of CCSU job searches, the investigation of internal complaints, and the development of student, faculty and staff diversity education. (Ex. 3, Affidavit of Carolyn Magnan,, dated 9/13/02, ¶¶ 8-9; Exhibit 7, Job Announcement; Exhibit 16, Affidavit of Richard Bachoo, dated October 31, 2007, ¶ 4 [hereinafter "Bachoo Affidavit"]).

8. The job description also sought a person with preferable experience in developing multicultural programs, diversity awareness and work in a higher education environment. (Ex. 7, Job Announcement, Ex. 16, Bachoo Affidavit, ¶ 5).

9. Defendant Carolyn Magnan, as the hiring manager for this particular position, appointed a diverse search committee from within CCSU to review the application materials and recommend finalists for on campus interviews.  (Exhibit 7, Excerpts from deposition of Carol Magnan, dated December 16, 2002, Vol. I, p. 7:19-21 [hereinafter Magnan Depo. Vol. I]; Ex. 4, Second Magnan Affidavit, ¶ 7; Ex. 16, Bachoo Aff., ¶ 6).

10. Ms. Magnan selected a committee that she believed had the administrative experience to read the job description and do a fair job of assessing applicants' qualifications in connection with the job posting.  (Ex., 7, Magnan Depo. Vol. I,  pp. 11:14-19, 17:2-8).

11. Ms. Magnan met with the search committee members on or about May 15, 2002 and told them that her desire was to get someone who could perform all of the job duties, and in particular, could prepare the affirmative action plans for the University because that is a large portion of the job. She provided the committee with information about how to conduct conducting a search and complete the Affirmative Action forms.  (Ex. 7, Magnan Depo. Vol. I, p. 26:4-9; Exhibit 8,  Search Committee Information, dated April 23, 2002; Ex. 5, Bachoo Depo., pp. 8:19-22, 11:1-7; Ex. 4, Second Magnan Affidavit, ¶ 8; Ex. 16, Bachoo Aff., ¶ 9).

12. The Committee was responsible for evaluating the candidates and categorizing them as either not-qualified, minimally qualified and finalists who would receive an

interview. (Ex. 7, Magnan Depo., Vol. I, p. 7:19-21; Exhibit 9, Excerpts from Deposition of Carol Magnan, dated December 19, 2002, Vol. II, pp. 11:11-12:15 [hereinafter "Magnan Depo. Vol. II]; Ex. 4, Second Magnan Affidavit, ¶ 9; Ex. 16, Bachoo Affidavit, ¶ 10).

13. The search committee was comprised of Richard Bachoo (Chairperson) a black male; Elene Demos, a white female; Twan Do, an Asian male; Domingo Arias, a Hispanic male; and Olusegun Odesina, a black male. (Ex. 4, Second Magnan Affidavit, ¶ 10; Exhibit 10, AAP Form 2, page 1; Ex. 16, Bachoo Affidavit, ¶ 8).

14. Ms. Donna Munroe, the CCSU Chief Personnel Officer, served as the University's Affirmative Action representative for this particular search because Ms. Magnan was the hiring officer. Ms. Munroe met with the committee and reviewed the affirmative action policies that govern hiring searches. (Ex. 5, Bachoo Depo., p. 23:18-25; Ex. 4, Second Magnan Affidavit, ¶ 11; Ex. 16, Bachoo Affidavit, ¶ 11).

15. The job announcement directed interested persons to send a letter of interest and resume to the Search Committee Chairperson, Richard Bachoo. Sixty-two (62) people applied for the CMA position. The search committee was not provided with the racial makeup, gender or age of the candidates during the selection process. (Ex. 4, Second Magnan Affidavit, ¶ 12; Exhibit 11, AAP Form 3; Ex. 16, Bachoo Affidavit, ¶ 12).

16. In June 2002, letters were sent out to various community organizations encouraging minority applicants to apply for the position. (Exhibit 12, June 12, 2002 letters; Ex. 16, Bachoo Affidavit, ¶ 13).

17.  Plaintiff believes he sent in a resume after hearing about the job by word of mouth. (Exhibit 13, Excerpts from Deposition Jewel Brown,, Brown v. CCSU, dated May 9, 2003, pp. 9:12-10:5 [hereinafter "Brown v. CCSU Depo."]).

18.  Plaintiff sent his resume directly to the CCSU Personnel Office. His resume was forwarded to the committee with directions to consider it along with all of the other applicants. (Exhibit 14, Memo date June 7, 2002 from Munroe to Bachoo; Ex. 16, Bachoo Affidavit, ¶ 14).

19. During the review process, Richard Bachoo informed Ms. Magnan that the committee was considering rejecting Mr. Brown as not qualified because his resume listed no dates upon which the committee could determine his years of service in each position.  Ms. Magnan asked Mr. Bachoo to give Mr. Brown all due consideration. Ms. Magnan wanted the committee to consider Mr. Brown for the position but did not want to interfere in their deliberations. (Ex. 4, Second Magnan Affidavit, ¶ 15; Ex. 16, Bachoo Affidavit, ¶ 15)

20.  The search committee Chairperson communicated to plaintiff that he needed to send a current resume with dates and a letter of interest. The plaintiff sent a letter of interest in the CMA position but did not provide any dates on his resume. (Ex. 14, Brown v. CCSU Depo., pp. 11:16-12:3, p. 14:16-20; and Exhibit 26, Deposition Exhibit 3; Ex. 4, Second Magnan Affidavit, ¶ 16; Ex. 16, Bachoo Affidavit, ¶ 16).

21.  To get the evaluation process started among committee members, Richard Bachoo designed a score sheet for search committee members to use for evaluating which candidates were minimally qualified for the position. The scoring sheet was only an informal starting point for the committee to begin discussions of each

5

candidate. (Ex. 5, Bachoo Depo., p. 26:6-27:24; Exhibit 15, Sample Sheet, Bachoo Deposition Exhibit # 17; Ex. 16, Bachoo Affidavit, ¶ 17).

22. The search committee met and discussed every candidate. Those candidates that did not meet the minimum qualifications were excluded from further consideration. From the committee's perspective, forty-seven (47) candidates did not meet the minimal qualifications. (Ex. 5, Bachoo Depo., pp. 27:25-32:2; Ex. 16, Bachoo Affidavit, ¶ 18)

23. Fourteen (14) candidates, including the plaintiff, were considered minimally qualified by the search committee. (Ex. 11, AAP Form 3; Ex. 16, Bachoo Affidavit, ¶ 19).

24. Having identified the qualified candidates, the committee reviewed and evaluated each of the candidates' credentials (resume and cover letter) to select six finalists who would receive on campus interviews. (Ex. 5, Bachoo Depo., pp. 31:4-32:2; p. 41:19-42:16; p. 48:18-21; Ex. 16, Bachoo Affidavit, ¶ 20).

25. The plaintiff was not selected as a finalist. The Committee did not select the plaintiff because, based upon his resume, the committee interpreted Brown's experience as being focused primarily upon enforcement and not on Affirmative Action plan preparation for state agencies. Mr. Brown's resume did not state how much of his time he spent drafting Affirmative Action plans or the number of plans. Also, the plaintiff's resume listed no dates for the Committee to ascertain how long Brown had served in each position listed on his resume. (Ex. 16, Bachoo Affidavit, ¶ 21; Exhibit 17, Plaintiff's Resume; Ex. 11, AAP Form 3, p. 2).

26. The six finalists included one male and five females. Two candidates had a Ph.D. Four had direct experience in higher education or extensive experience with Affirmative Action programs. Ex.11, AAP Form 3, p. 2; Ex. 4, Second Magnan Affidavit, ¶ 22; Ex. 16, Bachoo Aff., ¶ 22).

27. After the committee had discussed all the applicants and reached a consensus about the finalists to be interviewed, Mr. Bachoo prepared the Affirmative Action Form 3, listing all the candidates and the classifications. For Mr. Brown, Bachoo noted his race because he had met him and knew he was African American. Bachoo did not share information about Mr. Brown's race with the other search committee members. (Ex. 11, AAP Form 3; Ex. 16, Bachoo Affidavit, ¶ 23)

28. Before the Search Committee notified applicants of their status, Carolyn Magnan met with Richard Bachoo and discussed the committee's recommendations. Ms. Magnan, as the Hiring Manager, reviewed the resumes and compared them to the job description to see if she concurred with the committee's categorization of the candidates. (Ex. 7, Magnan Depo. Vol. I, p. 42:1-5; p. 47:6-11; Ex. 16, Bachoo Affidavit, ¶ 24; Ex. 4, Second Magnan Affidavit, ¶ 17).

29. Donna Munroe, as the Affirmative Action person monitoring the search, also reviewed the lists of finalists. (Exhibit 18, E-mail Munroe to Bachoo, dated July 31, 2002; Ex. 4, Second Affidavit of Magnan, ¶ 23; Ex. 16, Bachoo Affidavit, ¶ 25).

30. The committee ultimately recommended six candidates for on-campus interviews and then three finalists to Ms. Magnan for her to consider for a final hiring selection. (Ex. 7, Magnan Depo. Vol. I, p. 46:14-20; Ex. 11, AAP Form 3. p. 2).

31. Ms. Magnan reviewed the plaintiff's resume and concurred with the committee's recommendation that Mr. Brown, although minimally qualified, not be interviewed for the CMA position.  Ms. Magnan agreed that Mr. Brown had no experience in the preparation of affirmative action plans for state agencies since his experience was at the oversight level and not at the level of actual plan preparation. (Ex. 4, Second Magnan Affidavit, ¶ 20).

32.   On August 11, 2002, after the Search Committee had made its recommendations, the plaintiff sent a letter to Chairperson Bachoo. In his letter the plaintiff indicated that he was aware that he had not been selected for an interview and then proceeded to asserts several arguments about why he disagreed with the search committee's interpretation of his resume. (Exhibit 19, Letter to Richard Bachoo from Jewel Brown, dated August 11, 2002; Ex. 16, Bachoo Affidavit, ¶ 26).

33.   On August 19, 2002, Chairperson Bachoo acknowledged receipt of the plaintiff's letter. Bachoo passed the letter and information on to the search committee for its feedback.  The Committee did not change its opinion.  The committee members concluded that it would be unfair to reconsider the plaintiff after the process was completed and other applicants were not given an opportunity to submit additional information. (Ex. 16, Bachoo Affidavit, ¶ 27; Exhibit 20, Letter dated August 19, 2002 from Bachoo to Brown).

34.   Thomasina Carr, a black female,  with over ten (10) years of Affirmative Action experience in state government, including drafting Affirmative Action plans, was ultimately recommended to the President of the university by Ms. Magnan. The university president made the actual decision to hire Ms. Carr and he issued the

appointment letter. (Ex. 5, Magnan Depo. Vol. I, p. 73:7-10; Ex. 4, Second Magnan Affidavit, ¶ 24; Ex. 16, Bachoo Affidavit, ¶ 28; Exhibit 21, Resume of Thomasina Carr).

35. The search committee had no knowledge of the plaintiff's experience or associations at the CHRO, except for what was listed on his resume. (Ex. 16, Bachoo Affidavit, ¶ 29).

36. Defendant Magnan did not tell the committee to reject the plaintiff. To the contrary, Magnan asked Bachoo to make sure that Brown received full consideration. Ms. Magnan wanted the committee to consider Mr. Brown for the position but did not want to interfere in their deliberations. (Ex. 5, Bachoo Depo., pp. 52:13-24; p. 53:13-23; Ex. 4, Second Magnan Affidavit, ¶ 15; Ex. 16, Bachoo Affidavit, ¶ 30).

37. The plaintiff admits he has no evidence to support his allegation that his relationship with the former controversial head of the CHRO, Louis Martin, was the reason that he was denied the CMA position. (Ex. 13, Brown v. CCSU Depo., p. 71:18-24, p. 78:6-12, p. 78:20-25; p. 79:5-9)

38. The search committee had no knowledge about plaintiff's interactions while serving with the CHRO. They did not even know when and under what circumstances the plaintiff left the CHRO. Ms. Magnan made no negative comments about Mr. Brown's affiliation with the CHRO. (Ex. 4, Second Magnan Affidavit, ¶ 26; Ex. 16, Bachoo Aff., ¶ 31)

39. Plaintiff admits that he never prepared an Affirmative Action plan for a state university and that his resume did not list any work experience at a university. (Ex., 13, Brown v. CCSU Depo., pp. 25:2-8; pp. 25:20-26:3).

40. When the plaintiff was employed with the CHRO, that agency did not submit an Affirmative Action plan. (Ex. 13, Brown v. CCSU Depo., pp. 26:14-27:17).

41. Plaintiff did not provide dates for his work experience or the date he obtained his law degree. (Ex. 13, Brown v. CCSU Depo., pp. 71:25-72:2).

42. When Brown was employed by the CHRO, he spent about 50-75% of his time on enforcement of civil rights and then a female by the name of Lolita Jones became a deputy director who handled affirmative action matters. (Ex. 13, Brown v. CCSU Depo., pp.73:22-75:6).

43. Brown's resume does not state how much of his time he spent drafting Affirmative Action plans or the number of plans. (Ex. 17, Brown Resume)

44. When asked to substantiate his allegation that defendants Magnan and Bachoo communicated negative information about Brown's prior experience at the CHRO to search committee members, he stated that he could not prove it at the time but would be able to do so later. Brown never disclosed any additional information to this point in response to defendants' discovery requests. (Ex. 13, Brown v. CCSU Depo., pp. 77:25-78:19; Exhibit 22, Plaintiff's Answers to Interrogatories, dated April 14, 2003).

45. Brown admits that he is not aware of ANY conversations defendant Magnan had with anyone about his [Brown's] tenure at the CHRO while his application for the CCSU job was pending. (Ex. 13, Brown v. CCSU Depo., pp. 111:24-112:8).

46. Plaintiff agrees that the resume he submitted to CCSU focuses on the fact that his prior job at the CHRO involved the enforcement of anti-discrimination laws. (Ex. 13, Brown v. CCSU Depo., pp. 123:12-20; pp. 148:25-149:8).

47. Brown admits that if there is a group of qualified applicants, the search committee had to ultimately select the finalists. Being named as a finalist doesn't mean that you will be selected for the job. (Ex. 13, Brown v. CCSU Depo., pp. 135:10-14; 138:4-138:9).

48. Brown contents that he was blackballed from the CCSU position by Richard Bachoo. However, when asked what evidence he has to support this allegation, Brown testified that he met Richard Bachoo one time at a CCSU reception, spoke to him for several minutes and cannot recall the contents of the conversation. (Ex. 13, Brown v. CCSU Depo., p. 57:3-12; Ex. 16, Bachoo Affidavit, ¶ 32)

49. Brown was hired by the CHRO in 1991 by the then Executive Director, Louis Martin. (Ex. 2, Brown v. CHRO Depo., p. 10:11-25).

50. During the period of 1988 to 1994, Thomasina Carr, the successful candidate for the CMA position, was also employed by the CHRO under Louis Martin as Human Rights and Opportunities Representative. (Ex. 21, Resume of Thomasina Carr, p. 2).

51. Mr. Bachoo was present for all meetings when the search committee met to discuss the applicants and Mr. Brown's race, gender and age was not mentioned, discussed or considered by the search committee. (Ex. 16, Bachoo Affidavit, ¶ 34)

52. Defendants Magnan, Richard Judd and Bachoo were never served with process in their individual capacities. Copies of the complaint and summons were dropped off at CCSU with persons who were not authorized to accept service for any individual defendant in their personal capacity. The Defendants attest that they never authorized any person to accept personal service on their behalf.    (Ex. 4, Second Magnan

Affidavit, ¶ 4; Ex. 16, Bachoo Aff., ¶ 35, Exhibit 22, Affidavit of Wendy Wilton, dated October 15, 2007, ¶¶ 3-5; Exhibit 25 Returns of Service to the Court).

53. The defendants raised the issue of a lack of service of process upon Defendants Magnan, Bachoo and Judd in their Amended Answer as an affirmative defense. (Exhibit 24, Amended Answer, dated March 5, 2003, p. 12).

                DEFENDANTS,

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL

BY:   _____
       Joseph A. Jordano
       Assistant Attorney General
       Federal Bar # ct21487
       55 Elm Street, P.O. Box 120
       Hartford, CT 06141-0120
       Tel: 860-808-5340
       Fax: 860-808-5383
       E-mail: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

I hereby certify that pursuant to §5(b) of the Federal Rules of Civil Procedure, a copy of the foregoing Defendants' Local Rule 56(a)(1) Statement of Facts was sent via first class mail, postage prepaid, this 15th day of November, 2007 to:

  Jewel E. Brown, Pro Se
  21 Brewster Road
  South Windsor, CT  06074

                _____
                Joseph A. Jordano
                Assistant Attorney General